UNITED STATES DISTRICT COURT FILED

DISTRICT OF CONNECTICUT OCT20  2 41 PM '03

U. S DISTRICT COURT
NEW HAVEN, CONN.

| | | |
|---|---|---|
| JEFFREY JORDAN, | : | |
| PLAINTIFF, | : | CIVIL NO. 3:03CV00982 (MRK) |
| v. | : | |
| UNITED STATES OF AMERICA, | : | |
| DEFENDANT. | : | OCTOBER 20, 2003 |

<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

Pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure,

and Local Rule 7 of the Rules of Procedure for the District of Connecticut, the

Defendant, United States of America, through its undersigned counsel, respectfully

submits this memorandum in support of its Motion to Dismiss above-captioned action.

Dismissal of the Amended Complaint is appropriate for the reasons set forth below.

I.    <u>Procedural Background</u>

On June 3, 2003, Plaintiff, Jeffrey Jordan, commenced this action under the

Federal Tort Claims Act, 28 U.S.C. Section 2671 <u>et seq.</u> ("FTCA").   Plaintiff sought to

amend the complaint on August 11, 2003, which request was granted by the Court on

August 19, 2003.  The three-count Amended Complaint names the United States as

defendant and raises claims of emotional distress in connection with Plaintiff's

employment by the Internal Revenue Service ("IRS") in Norwalk, Connecticut.  As a

NO ORAL ARGUMENT IS REQUESTED

factual predicate for his claims, Plaintiff alleges that he complained to his supervisor about alleged improper activity on her part and that thereafter Defendant engaged in a course of conduct that ended in his resignation from the IRS.  Count One alleges that the IRS intentionally caused him emotional distress; Count Two alleges negligent infliction of emotional distress; and Count Three alleges reckless infliction of emotional distress.  Plaintiff seeks damages in the amount of $1,000,000.

On October 1, 2003 the Court granted the Defendant until October 20, 2003 to respond to the Amended Complaint.  Defendant now respectfully submits this motion to dismiss the action in its entirety.[1]

II.    Factual Background

A.    Facts Apparent from the Face of the Complaint

In this action, the Plaintiff is suing the United States for emotional injuries he allegedly sustained as a result of incidents occurring during his IRS employment.  In his Amended Complaint, Plaintiff alleges that on March 1, 2000 his supervisor, Cheryl Pepe, delivered photocopied excerpts of a book to all of her subordinates with orders to read the excerpts and be prepared to discuss them at a March 15, 2000 meeting.  See Amended Complaint, ¶ 14.  Plaintiff next alleges that he attended the March 15, 2000 meeting, and that Ms. Pepe laughed at the fact that she illegally copied the book and asked her employees to "shred the evidence".  Id. at ¶ 15.

Plaintiff claims that he was concerned that Ms. Pepe had violated federal law by copying the book, and that he contacted the publisher of the book to determine if she

_____

[1]By Order dated October 9, 2003, this case was transferred from District Judge Stefan R. Underhill to District Judge Mark R. Kravitz.

had permission to make the copies. Id. at ¶ 16.   Plaintiff alleges that the IRS did not

have permission to copy the book.  He claims that he approached Ms. Pepe about the

issue and she replied, "Don't f... with me", and implied that she would cause him

difficulty if he persisted.  Id. at ¶ 17. Plaintiff goes on to allege that after this

conversation, Ms. Pepe, with the approval of her IRS superiors Patrick Spinola and

Joseph Wynne, began a course of conduct that resulted in Plaintiff's resignation in

February of 2001.  Id. at ¶ 18.   According to the Plaintiff, this course of conduct

included false and misleading entries into his employment record, negative reviews,

humiliation and embarrassment, revocation of his flex-time status, and denial of his

rights under the Hatch Act. Id. at ¶ 18, subparagraphs (a) through (e).   Plaintiff alleges

that as a result of this course of conduct, he suffered permanent injuries and emotional

distress.  Id. at ¶ 19, subparagraphs (a) through (i).

     B.    Facts Outside of the Pleadings

     On June 27, 2001, Plaintiff filed a timely claim with the Office of Workers'

Compensation Programs (OWCP), United States Department of Labor, seeking

benefits under the Federal Employees Compensation Act , 5 U.S.C. § 8101 et seq.

(FECA).  See Declaration of Edward G. Duncan dated September 10, 2003 ("Duncan

Declaration"), attached hereto, at ¶ 3.  This claim alleged that the Plaintiff had

sustained work-related stress and heart palpitations as a result of events occurring in

connection with his IRS employment. Duncan Declaration, ¶ 3.  By letter dated July 10,

2001, the OWCP asked the Plaintiff to submit further factual and medical

documentation in support of his claim.  In a July 28, 2001 letter Plaintiff asked that his

claim be withdrawn.  This request was granted by the OWCP on January 16, 2002.

-3-

Duncan Declaration, ¶ 4.

Edward G. Duncan, Deputy Director for Federal Employees' Compensation,

OWCP, U.S. Department of Labor, was asked to render an opinion as to whether the

Plaintiff would be covered under the FECA for an emotional condition and emotional

which allegedly related to events occurring during his IRS employment.   Duncan

Declaration, ¶ 5.  Mr. Duncan issued an opinion concluding that there is a significant

possibility of coverage under the FECA.  Duncan Declaration, ¶ 6, and Attachment A

thereto.

III.    Standard of Review

Defendant moves to dismiss the Amended Complaint pursuant to 12(b)(1) and

(6), Fed. R. Civ. P.  In ruling on a motion to dismiss under Rule 12(b)(1), the court must

assume as true the factual allegations in the complaint.   Shipping Financial Servs.

Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  However, "argumentative

inferences favorable to the pleader will not be drawn." Romanella v. Hayward, 933 F.

Supp. 163, 165 (D. Conn. 1996), aff'd, 114 F.3d 15 (2d. Cir. 1997) (citing 5A Charles A.

Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at 218-219 (1990 &

Supp. 1991)).  In considering a 12(b)(1) motion, "the court may resolve disputed

jurisdictional fact issues by reference to evidence outside the pleadings, such as

affidavits." Antares Aircraft, L.P. v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d

Cir. 1991) (citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir.

1986)(additional citations omitted)).  Once subject matter jurisdiction is challenged, the

party asserting subject matter jurisdiction bears the burden of establishing that such

jurisdiction exists. <u>Romanella</u> at 165 (citing <u>Thomson v. Gaskill</u>, 315 U.S. 442, 446 (1942)).

Similarly, a complaint is subject to dismissal for failure to state a claim under Rule 12(b)(6) where the court is convinced that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. <u>Romanella</u> at 165.   The court must also accept as true the well-pleaded allegations of fact by the non-moving party and must construe those allegations in the light most favorable to that party.  <u>In re Scholastic Corp. Sec. Litig.</u>, 252 F.3d 63, 69 (2d Cir. 2001).  However, unlike motions under 12(b)(1), 12(b)(6) motions the Court may not consider matters outside of the pleadings without converting the motion into one for summary judgment.  <u>Martin v. Reno</u>, No. 96 Civ.7646(BSJ), 1999 WL 527932, at *1 (S.D.N.Y. July 22, 1999).

Dismissal under Rule 12(b) is appropriate in this case for the reasons set forth below.

IV.    <u>Argument: Defendant's Motion to Dismiss Should Be Granted Because this</u>
<u>Court Lacks Subject Matter Jurisdiction over the Claims in the Amended</u>
<u>Complaint</u>

Although Plaintiff has brought his complaint under the FTCA, his claims of governmental negligence are cognizable under two federal statutory schemes, namely, the Civil Service Reform Act of 1978, Pub. L. 95-454, 92 Stat. 1111 (codified as amended in pertinent sections of 5 U.S.C.§ 1101, <u>et seq.</u>) (CSRA), and the Federal Employees Compensation Act , 5 U.S.C. § 8101 <u>et seq.</u> (FECA).  The applicability of this legislation operates to divest this Court of jurisdiction to hear Plaintiff's claims under the FTCA.

A.    Plaintiff's Tort Claims are Barred by the CSRA

The CSRA established "'a comprehensive system for reviewing personnel action taken against federal employees' [and] provides the exclusive remedy by which those employees may challenge such actions. . ." Tiltti v. Weise, 155 F.3d 596, 600 (2d Cir. 1998) (quoting United States v. Fausto, 484 U.S. 439, 455 (1988)(additional citations omitted)).  See also Bush v. Lucas, 462 U.S. 367, 385 (1983), (CSRA provides comprehensive scheme for review of arbitrary actions by government supervisors.)  The CSRA provides that a government employee may challenge an adverse personnel actions by following formal proceedings before the federal agency, including appeal to the Merit Systems Protection Board, and judicial review in the Court of Appeals for the Federal Circuit.  Tiltti, 155 F.3d at 600.  Courts have construed the CSRA as a bar to most suits brought by federal employees against the United States.  Petrousky v. United States, No. 91-CV-1048, 1991 WL 268689, at *3 ((N.D.N.Y. Dec. 11, 1991).

In the present case, the Plaintiff alleges that the IRS engaged in a course of improper conduct that resulted in his resignation, and that such conduct was motivated by a desire to retaliate against him for reporting inappropriate activity by his supervisor. Plaintiff clearly seeks redress for grievances and disputes that arise out of his federal employment.  Accordingly, these allegations are governed by the CSRA, which serves as Plaintiff's exclusive remedy for such grievances.[2]  This conclusion was reached by a district court under similar circumstances in Petrousky, supra.  In that case, the plaintiff alleged that he suffered retaliation as a civilian employee of the Army after he reported

---

[2]Nowhere in the Plaintiff's Amended Complaint does he allege that he pursued any administrative remedies under the CSRA.

fraudulent activities he observed while he working as a management analyst.

Petrousky, 1991 WL 268689, at *3.  The Court held:

> As an aggrieved federal employee, plaintiff is bound to seek redress for his claims through the avenues created by Congress in the CSRA. The CSRA provides the exclusive remedy for plaintiff's claims. Stated in procedural terms, Congress's enactment of the CSRA marked an implicit reservation of the federal government's sovereign immunity from suits brought by its employees. Given the exclusive remedial nature of CSRA, this court simply is not authorized to adjudicate over plaintiff's claims. Accordingly, plaintiff's claim must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction.

Petrousky, 1991 WL 268689, at *3.  A similar result was reached in Caney v. U.S. Dept. of Treasury, No. CIV. A. 94-30215-MAP, 1995 WL 334254 (D. Mass. May 09, 1995). There, a former IRS employee brought claim under the FTCA alleging emotional distress from an adverse personnel action.  In dismissing this claim, the Court reasoned:

> Plaintiff cannot bring an action under the . . . FTCA . . . based on a dispute arising out of federal employment, because the CSRA . . . is the exclusive remedy for claims arising out of federal employer-employee relationships. United States v. Fausto, 484 U.S. 439 . . . (1988); Morales v. Department of the Army, 947 F.2d 766 (5th Cir.1991); Rivera v. United States, 924 F.2d 948 (9th Cir.1991). Unfortunately, Plaintiff is under the misapprehension that his right to file under the Federal Torts Claim Act arises from his no longer being employed by the Defendant at the time he made his claim. In essence, he believes that the FTCA's "private" right of action arises from his being a "private" citizen when making his claim. He ignores the fact that his claim, arising if at all from his one-day suspension while employed by Defendant, is governed by the CSRA. . . . Since Plaintiff's claim arises out of his employment relationship with the government, the CSRA provides his exclusive remedy and the action must be dismissed.

Caney, 1995 WL 334254, at *3.

In light of the exclusivity of the CSRA, this Court is without subject matter jurisdiction to hear Plaintiff's claims in this case.  This Court should dismiss the Amended Complaint on this basis.

B.    Plaintiff's Tort Claims Are Barred by the FECA

In addition to the CSRA, the Plaintiff's claims are also covered by the Federal

Employees Compensation Act, 5 U.S.C. § 8101, et seq. FECA provides:

> (a) The United States shall pay compensation as specified by this
> subchapter for the disability or death of an employee resulting from
> personal injury sustained while in the performance of his duty, unless the
> injury or death is—
>
>> (1) caused by willful misconduct of the employee;
>> (2) caused by the employee's intention to bring about the
>> injury or death of himself or of another;  or
>> (3) proximately caused by the intoxication of the injured
>> employee.

5 U.S.C. § 8102(a).   FECA is the "sole remedy against the United States for

work-related injuries of federal employees and their spouses." Maldonado v. Colon, No.

97 CIV. 3966 (KMW), 1998 WL 240479, at *5 (S.D.N.Y. May 12, 1998)(citing  5 U.S.C.

§ 8116(c)[3] and Votteler v. United States, 904 F.2d 128, 130 (2d Cir.1990)(FECA is the

exclusive remedy for redressing work-related injuries sustained by a federal

employee)).

Where FECA applies, federal courts do not have jurisdiction to hear FTCA

claims brought by an injured federal employee. Hightower v. United States, 205

F.Supp.2d 146, 151 (S.D.N.Y. 2002).  As the United States Supreme Court has held,

---

[3]Section § 8116(c) provides: "The liability of the United States or an instrumentality
thereof under this subchapter or any extension thereof with respect to the injury or death
of an employee is exclusive and instead of all other liability of the United States or the
instrumentality to the employee, his legal representative, spouse, dependents, next of kin,
and any other person otherwise entitled to recover damages from the United States or the
instrumentality because of the injury or death in a direct judicial proceeding, in a civil
action, or in admiralty, or by an administrative or judicial proceeding under a workmen's
compensation statute or under a Federal tort liability statute. . ."

"FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary's determination of FECA coverage .... Consequently the courts have no jurisdiction over FTCA claims where the Secretary of Labor determines that FECA applies." Hightower, 205 F.Supp.2d at 151 (quoting Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 90 (1991), and citing Votteler, 904 F.2d at 130; Swafford v. United States, 998 F.2d 837, 839-41 (10th Cir.1993); McDaniel v. United States, 970 F.2d 194, 196-98 (6th Cir.1992); Grijalva v. United States, 781 F.2d 472, 474 (5th Cir.1986)).

In this case, there is no dispute that the Plaintiff was a federal employee at the time of the alleged improper conduct by the IRS. And the Amended Complaint is clear that he is attempting to recover for a work-related injury. Accordingly, the FECA applies and divests this Court of jurisdiction to hear the Plaintiff's claims. The applicability of FECA is further supported by the fact that on June 27, 2001, Plaintiff filed a timely FECA claim with the OWCP seeking compensation for the same emotional injuries he is alleging in this case. Duncan Declaration, ¶ 3. While Plaintiff withdrew that FECA claim, he can still reinstate that claim, and any subsequent reinstatement would relate back to his timely filed claim of June 27, 2001. See Attachment A to Duncan Declaration, at p.3, n.4. In addition, Edward G. Duncan, Deputy Director for Federal Employees' Compensation, OWCP, U.S. Department of Labor, was asked to render an opinion as to whether the Plaintiff would be covered under the FECA for an emotional condition and emotional which allegedly related to events occurring during his IRS employment. Duncan Declaration, ¶ 5. Mr. Duncan issued an opinion concluding that there is a significant possibility of coverage under the FECA. Duncan Declaration, ¶ 6, and Attachment A thereto.

-9-

It is clear that FECA is the exclusive remedy for such a claim, and this Court is without jurisdiction to hear the Plaintiff's tort claims. The Amended Complaint is subject to dismissal on this basis as well.[4]

V.    Argument: Defendant's Motion to Dismiss Should Be Granted Because the Certain Claims in the Amended Complaint Are Untimely and Therefore Fail to State a Claim upon Which Relief Can Be Granted

Finally, certain of the Plaintiff's claims in the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. In particular, any of Plaintiff's claims which occurred before September, 2002 should be dismissed as the Plaintiff has failed to timely exhaust his administrative remedies. Under the FTCA, exhaustion of administrative remedies is an absolute prerequisite to federal district court jurisdiction. Pursuant to 28 U.S.C. Section 2675(a),

---

[4] The government submits that the Amended Complaint is subject to dismissal with prejudice on this basis (as well as CSRA exclusivity). However, the Court is directed to Maldonado, supra, wherein the Court dismissed a similar complaint without prejudice. The Court held:

> Determinations regarding FECA coverage are made by the Secretary of Labor. See 5 U.S.C. § 8124. Where a substantial question exists concerning whether coverage under the FECA exists, the Secretary of Labor must be given the opportunity to speak first on the matter . . . Under FECA, plaintiffs must first present their claims to the Secretary of Labor. Plaintiffs make no allegation that they have presented their claims to the Secretary of Labor. Accordingly, the Court dismisses the Complaint without prejudice.

Maldonado, 1998 WL 240479, at *6 . Relatedly, the Court in Doe v. U.S., 914 F.Supp. 945 (W.D.N.Y. 1996) held that the proper course under these circumstances was to stay consideration of the plaintiff's FTCA claims pending a final determination of FECA applicability. Doe, 914 F.Supp. at 950 (citations omitted). If this Court does not dismiss the Amended Complaint with prejudice, then the government respectfully requests that the present case be stayed pending a final determination of FECA coverage by the OWCP.

> [a]n action shall not be instituted upon a claim against the United States
> for money damages for injury or loss of property or personal injury or
> death caused by the negligent or wrongful act or omission of any
> employee of the Government while acting within the scope of his office or
> employment, <u>unless the claimant shall have first presented the claim to
> the appropriate Federal agency and his claim shall have been finally
> denied by the agency in writing</u> . . .

Further, a tort claim against the United States "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of final denial of the claim by the agency to which it was presented." <u>See</u> 28 U.S.C. Section 2401(b).

In the present case, Plaintiff filed an administrative tort claim on or about September 10, 2002. <u>See</u> Amended Complaint, ¶ 3. In his Amended Complaint, Plaintiff makes allegations concerning incidents allegedly occurring at his workplace, including events in or around March of 2000. <u>See</u> Amended Complaint, ¶¶ 14-17. Given that the tort claim was filed in September of 2002, any claims which occurred more than two years prior to the filing of the tort claim are outside of the two-year statute of limitations imposed by 28 U.S.C. Section 2401(b). <u>See also</u> <u>Johnson v. Smithsonian Inst.</u>, 189 F.3d 180, 189 (2d Cir. 1999). Therefore any such claims should be dismissed for failure to state a claim upon which relief can be granted.

-11-

VI.    Conclusion

For the foregoing reasons, the Defendant, United States of America, hereby

respectfully requests that its motion to dismiss the Amended Complaint be granted.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

LAUREN M. NASH
ASSISTANT U.S. ATTORNEY
P.O. BOX 1824
NEW HAVEN, CT  06508
(203) 821-3700
FEDERAL BAR # ct01705

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 303CV00982 (SRU) |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

DECLARATION OF EDWARD G. DUNCAN

I, Edward G. Duncan, do hereby state and declare that:

1.      I am the Deputy Director for Federal Employees' Compensation, Office of

Workers' Compensation Programs (OWCP), United States Department of Labor, and as part of

my duties and responsibilities, I am familiar with the administration of the Federal Employees'

Compensation Act (FECA), 5 U.S.C. §§ 8101 *et seq.*

2.      I was provided and have reviewed a copy of the complaint filed by plaintiff

Jeffrey Jordan in the above-captioned matter.

3.      I directed a search to be made of the records of OWCP, which disclosed that a

timely claim for compensation pursuant to the FECA was filed by plaintiff Jeffrey Jordan on

June 27, 2001 with the OWCP.  This claim alleged that plaintiff Jeffrey Jordan sustained work

related stress and heart palpitations as a result of events occurring in his employment at the

Department of the Treasury, Internal Revenue Service.

4.    By letter dated July 10, 2001, the OWCP requested that plaintiff submit further factual and medical evidence in support of his claim. In a July 28, 2001 letter, plaintiff requested that his claim be withdrawn; on January 16, 2002, the OWCP granted plaintiff's request to withdraw the claim. True and correct copies of OWCP's July 10, 2001 letter to plaintiff, plaintiff's July 28, 2001 letter to OWCP, and OWCP's January 16, 2002 letter to plaintiff, are attached to this declaration as Attachments B, C, and D, respectively.

5.    I was asked to render an opinion concerning the question of whether plaintiff Jordan would be covered under the FECA for an emotional condition and emotional distress allegedly related to events occurring at plaintiff's employment at the Department of the Treasury's Internal Revenue Service (IRS) between March 1, 2000 and March 15, 2000, and continuing until his resignation from employment in February of 2001.

6.    I issued an opinion, a true and correct copy of which is attached hereto as Attachment A, which concluded that "there is a significant possibility of coverage under the FECA for an emotional condition sustained by Plaintiff Jeffrey Jordan allegedly related to actions of the Department of the Treasury, Internal Revenue Service, with respect to events at work between March 1, 2000 and March 15, 2000, and continuing until his resignation from employment in February of 2001."

2

7.    This opinion is based upon the assumption that all factual statements in the documents provided to me are true and that no additional facts material to a determination on FECA coverage in this matter exist.

I declare under the penalty of perjury that the foregoing is true and correct.  Executed on September 10, 2003.  28 U.S.C. § 1746.

EDWARD G. DUNCAN
Deputy Director for Federal Employees' Compensation
Office of Workers' Compensation Programs
United States Department of Labor

3

September 10, 2003

MEMORANDUM FOR:    Lauren Nash, Esq.
                         Assistant United States Attorney

FROM:                EDWARD G. DUNCAN
                         Deputy Director for Federal Employees' Compensation

SUBJECT:        *Jeffrey Jordan v. United States, et al.*
                         Civil Action No. 303CV00982 (SRU) (D CT)

This is in response to your request for an advisory opinion whether Jeffrey Jordan, the plaintiff in the above-entitled matter, would be covered under the Federal Employees' Compensation Act (FECA) for an emotional condition and emotional distress allegedly related to events occurring at plaintiff's employment at the Department of the Treasury's Internal Revenue Service (IRS) between March 1, 2000 and March 15, 2000, and continuing until his resignation from employment in February of 2001. The opinion expressed herein is based upon the facts alleged in the complaint filed in the above-referenced action, a copy of which I have been provided and have reviewed. Actual adjudication of a claim presented pursuant to the FECA based upon the events set forth in the complaint may disclose different or additional facts that substantially affect the ultimate determination of this matter.

Upon review of the allegations of the complaint, I conclude that there is a significant possibility that plaintiff may be covered under the FECA for an emotional condition causally related to factors of his federal employment.[1] While the facts alleged in the complaint center around plaintiff Jeffrey Jordan's reactions to events at work involving actions of Cheryl Pepe, his immediate supervisor, and her superiors on and after March 1, 2000, this alone does not compel a finding of coverage under the FECA. The Employees' Compensation Appeals Board (ECAB) has held that workers' compensation is not applicable to each and every injury or illness that is somehow related to an employee's employment.

In *Lillian Cutler*, 28 ECAB 125 (1976), the ECAB discussed at length the principles applicable to alleged employment-related emotional conditions and the distinctions as to the type of employment situation giving rise to an emotional condition which will be covered under the FECA. When an employee experiences an emotional reaction to his regular or special assigned employment duties or to a requirement imposed by the employment, or has fear and anxiety regarding his ability to carry out his duties, and the medical evidence establishes that the

---

[1]    The fact that a claimant's injury or disease is covered under the FECA does not necessarily mean that the claimant will receive compensation. To establish entitlement to compensation for disability from work under the FECA, the claimant must demonstrate that he has an emotional condition causally related to factors of his federal employment, and must also show that this condition resulted in disability from work.

Attachment A

disability resulted from an emotional reaction to such situation, the disability is generally regarded as due to an injury arising out of and in the course of employment and comes within the coverage of the FECA. On the other hand, where the disability results from an employee's emotional reaction to employment matters, but such matters are not related to the employee's regular or special assigned work duties or requirements of the employment, the disability is generally regarded as not arising out of and in the course of employment and does not fall within the coverage of the FECA. (In *Cutler*, the ECAB held that the claimant's disability, which was caused by her disappointment in not receiving a promotion for which she applied, did not constitute an injury sustained in the performance of duty.)

Where the evidence demonstrates that the employing agency has neither erred nor acted abusively in the administration of personnel matters, coverage under the Act is not afforded. Mere perceptions of harassment, emotional reactions to leave matters, emotional reactions to transfers, disappointment over failure to obtain desired transfers or promotions, and reactions to letters of reprimand do not constitute employment factors as such reactions arise from frustration at not being permitted to work in a particular environment rather than from assigned duties or requirements imposed on an employee by his employment. *Samuel F. Mangin, Jr.*, 42 ECAB 671 (1991); *Donald V. Bottles*, 40 ECAB 349 (1988); *Richard J. Dube*, 42 ECAB 916 (1991). The ECAB has held that difficult relations with supervisors and coworkers can constitute a factor of employment. *Lawrence C. Mar*, 42 ECAB 723 (1991); *Abe E. Scott*, 45 ECAB 164 (1993).[2] In addition, where the Merit Systems Protection Board (MSPB) found that an employing agency terminated the employee without the proper evidence, ECAB found that this error was sufficient to bring any emotional reaction by the employee to the termination action within the coverage of the Act. *Norman A. Harris*, 42 ECAB 923 (1991). However, an employee's reaction to an appropriately-conducted investigation into improper conduct is not covered under the FECA. *Helen Marrotte*, claiming as widow of *Walter E. Marrotte*, 36 ECAB 670 (1985).

The complaint contains allegations of various events at work which, if established, could be considered factors of employment under *Cutler* analysis. These include the allegations that on March 15, 2000 plaintiff attended a meeting conducted by Cheryl Pepe "wherein Ms. Pepe laughed at plaintiff's allegation that she illegally copied the book ["Who Moved the Cheese"] and asked her employees to 'shred the evidence' " (Complaint, ¶ 15, p. 3); that plaintiff Jordan contacted the publisher of the book about Ms. Pepe's use of the book, and approached Ms. Pepe, who impliedly warned plaintiff "that she would cause difficulty for him if he persisted" (Complaint, ¶¶ 16, 17); and that following this conversation, Ms. Pepe and her superiors "began a course of conduct ultimately ending with the Plaintiff's resignation in February 2001." Complaint, ¶ 19, pp. 3-4. The complaint further alleges that this course of conduct included "false and misleading entries into the Plaintiff's employment record"; "negative reviews and assessments not based upon fact"; "humiliation and embarrassment"; "revocation of the Plaintiff's status in regard to flex-time"; and "denial of the

---

[2]     It is also clear that intentional actions of supervisors and coworkers can constitute compensable factors of employment under the FECA. *See Arlene F. Stidham*, 46 ECAB 674 (1995).

Plaintiff's rights under the Hatch Act." Complaint, ¶ 19, p. 4. The complaint further alleges that as a direct and proximate result of the actions of Ms. Pepe and the IRS, plaintiff Jordan "has suffered severe and painful and permanent injuries and emotional distress." *Id.*

Based on the foregoing discussion, and on the allegations of the complaint, plaintiff Jeffrey Jordan might be able to establish that he sustained an emotional condition causally related to his federal employment as a result of actions taken by the IRS. While the ECAB has held that actions of an employee's supervisor which the employee characterizes as harassment may constitute employment factors of employment giving rise to coverage under the FECA, *Pamela Rice*, 38 ECAB 838, 843 (1987), the ECAB has also held that mere perceptions alone of harassment are not covered under the FECA. *See Ruthie M. Evans*, 41 ECAB 416 (1990). Accordingly, if plaintiff is able to prove his allegations of harassment, and submits medical evidence based on a proper factual and medical background supporting his contention that his emotional condition is causally related to factors of his federal employment, he would be entitled to compensation under the FECA. The medical evidence would have to demonstrate, with appropriate medical rationale, how plaintiff's emotional condition was causally related to the specific incidents which are properly characterized as factors of employment.[3]

Based on the facts alleged in the complaint, I conclude that there is a significant possibility of coverage under the FECA for an emotional condition sustained by Plaintiff Jeffrey Jordan allegedly related to actions of the Department of the Treasury, Internal Revenue Service, with respect to events at work between March 1, 2000 and March 15, 2000, and continuing until his resignation from employment in February of 2001.[4]

---

[3]       Similarly, if plaintiff can establish that the employing agency's actions constituted error or abuse in the administration of a personnel or administrative matter, and that he sustained an emotional condition as a result of such error or abuse, he could establish a compensable claim under the FECA.

[4]       5 U.S.C. § 8122(a) provides a three-year time limit on the filing of a claim for compensation under the FECA. As noted in the declaration to which this memorandum is attached, plaintiff filed a FECA claim through his employing agency on June 27, 2001. Because plaintiff's June 27, 2001 FECA claim was filed within three years of March 1, 2000, it was timely filed. Although the OWCP by letter dated January 16, 2002 granted plaintiff's July 28, 2001 request to withdraw his claim for compensation under the FECA, any subsequent reinstatement of this claim would relate back to June 27, 2001, the date the claim was initially filed, and would therefore be considered timely filed. See the Federal (FECA) Procedure Manual, Part 2-Claims, Chapter 2-801-4.

File Number: 022013690
1041-NY-STRESS-O-I

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
201 VARICK ST RM740 PO BOX 566
NEW YORK NY 10014-0566
Phone: (212) 337-2075

July 10, 2001

Date of Injury:  03/31/2000
Employee:      Jeffrey Jordan

Jeffrey T. Jordan
21 Hoyts Road
Winedale, NY 12594

Dear Mr. Jordan:

This is in reference to your claim for an employment-related emotional condition.

The material you have submitted in support of a claim for an emotional condition has been reviewed.  The material received to date consisted of Form CA2 Notice of Occupational Illness, Claimant Statement, Position Description and Supervisor's Statement.

Even though you indicate that you suffered an emotional reaction to stress, you have not identified the aspects of your employment that you consider detrimental to your health.  Give a chronological account of all the factors that you consider responsible for your condition.  Be specific as to persons, dates, locations, practices and incidents.  Please have your supervisor comment on your statement prior to submission to the office.  Respond to the following questions:

- Your supervisor states that because you participated in the flexiplace program, you were free from many of the regular office type interruptions experienced by other Revenue Officers.  How were you subjected to stress and harassment when you worked in the flexiplace program?  Provide details.
- You indicated 'poor reviews' caused stress.  However, you indicated that you never received negative reviews and received numerous awards, outstanding ratings and letter of commendation.  Your supervisor has stated that you were counseled orally and in writing several times regarding performance as well as conduct issues.  In fact, you were placed on the Performance Improvement Plan on January 11, 2001, and you voluntarily resigned approximately one month later.  Please comment.
- You did not specify the 'double standards' which forced your resignation.  Your supervisor states you reigned voluntarily.  Give specific incidents.
- How were you constantly harassed by Ms. Pepe?  Provide specific dates, locations, and statements.  Be advised that employees who are harassed, teased or called derogatory names by coworkers are considered to be in the performance of duty provided that the reasons for the harassment or teasing are not imported into the employment from the employee's domestic or private life.
- Provide a detailed comparison how your workload increased.  For example, when and how did it increase?  Did other Revenue Officers' workload increase?
- Your supervisor states that since you were placed on the Performance Improvement Plan, you were removed from the flexiplace program.  Please comment.
- Your supervisor has stated that the allegation of violating taxpayer's rights was thoroughly investigated by TIGTA, which concluded that was no corroborating evidence to support your allegations.  Please comment.
- Explain how your claimed stress has carried over to your personal life.
- Why did you delay filing your claim?  It is not clear how you were attempted to rectify the situation.  Provide details.

**Please note that reactions to administrative actions by the employer, unless determined to be in error or abusive, are considered self-generated rather than arising in and out of employment,  as required for protection under the Federal Employees' Compensation Act and for this reason, not compensable.**

Page 1 of 2

Attachment B

File Number: 022013690
1041-NY-STRESS-O-I

**You stated that Ms. Pepe violated your rights.** If you think that your case is in direct result of administrative error or abuse, please submit evidence of this such as witness statements EEO and grievance resolutions.

If the factual aspect of your claim is accepted, we will need medical reports supporting your claim. **Please provide a comprehensive medical report from your treating physician which includes your complete medical history; describes your symptoms; results of examinations and tests; diagnosis; the treatment provided; the effect of the treatment; and the doctor's opinion, with medical reasons, on the cause of your condition.**

This is not a final decision but is intended to give you the opportunity to submit additional evidence before a final decision is made. Your case will be held open for a period of 30 calendar days in order to give you this opportunity. If we have not received any new evidence within that period, we will make a final determination based on the evidence presently of record.

**To The Employing Agency:**
Please submit your comments on the employee's statement within 15 days from the date of this letter. In addition, submit the following factual evidence:
* Copies of written memo concerning potential findings of insubordination.
* Doctor's note dated July 25 and August 16, 2000
* Supervisor memo stating management was willing to provide assistance.


Sincerely,



B. Perez
Claims Examiner


US DEPARTMENT OF TREASURY
INTERNAL REVENUE SERVICE
WORKERS COMPENSATION CENTER
11 SOUTH 12TH STREET SUITE 110
RICHMOND, VA 23219

No CASE # RC, 8-1-01

To: U S  Department of Labor
     Attn: B Perez
     201 Varick Street Room 740
     P O Box 566
     New York NY 10014-0566

From: Jeffrey T Jordan
     21 Hoyts Road
     Wingdale, NY 12594

Date: 07-28-01

I am in receipt of your letter to me dated 07-10-01. You have asked me to respond to
about 10 questions and have granted me 30 days to do so. The time frame you have given
me is insufficient to respond to those questions. In particular, one of the questions states
" Why did you delay filing your claim ". My question to you is why is that relevant when
the law allows 2 years from the time of injury????? I hereby withdraw my claim and
request that you respond to me regarding my above question.

                                        Sincerely,

                                        Jeffrey T Jordan

CASE # 022013690
File # 022013690

Attachment C

Case No: 022013690                    Page No: 1                    Rec'd Date: 09/04/2001

File Number: 022013690
*WITHDRAWAL-D-I*

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
PO BOX 8300
LONDON KY 40742-8300
Phone: (212) 337-2075

January 16, 2002

Date of Injury: 03/31/2000
Employee:     Jeffrey Jordan

Jeffrey T. Jordan
21 Hoyts Road
Winfdale, NY 12594

Dear Mr. Jordan:

I have received your written request, dated 7/28/01, to withdraw your claim. As your case file has not been adjudicated, this request is granted. The Office of Workers' Compensation Programs will take no further action in consideration of your claim.

Please note that any continuation of pay paid by your employer due to the filing of this claim may be converted to sick or annual leave at your choice. Should you choose not to do so, your employer may view any payments made as an overpayment.

Should you have any questions, please contact me.

Sincerely,

*Alan Stein*

Alan Stein
Senior Claims Examiner

US DEPARTMENT OF TREASURY
INTERNAL REVENUE SERVICE
WORKERS COMPENSATION CENTER
11 SOUTH 12TH STREET SUITE 110
RICHMOND, VA 23219

Attachment D

## CERTIFICATE OF SERVICE

This is to certify that a copy of the within and foregoing Memorandum in Support

of Motion to Dismiss has been mailed, postage prepaid, on this 20th day of October,

2003, to:

Kenneth A. Votre, Esq.
Hurwitz, Cooper, Silverman & Votre, P.C.
667 State Street
New Haven, CT 06511

LAUREN M. NASH
ASSISTANT U.S. ATTORNEY
P.O. BOX 1824
NEW HAVEN, CT  06508
(203) 821-3700
FEDERAL BAR # ct01705