FILED

2003 DEC -8 P 4: 50

U.S. DISTRICT COURT
NEW HAVEN, CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY JORDAN<br>*Plaintiff*, | CIVIL ACTION NO. 303 CV 00982 MRK |
| VS. | |
| UNITED STATES OF AMERICA<br>*Defendant.* | |
| | DECEMBER 8, 2003 |

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

### I. FACTS:

The Plaintiff, Jeffrey Jordan, was an employee of the United States Department of the Treasury, Internal Revenue Service and worked out of the IRS's Norwalk, Connecticut offices for nearly ten years. He worked in Collections and received many superior employment reviews, and was by all accounts an excellent collections officer.

Cheryl Pepe was Mr. Jordan's direct supervisor. Cheryl Pepe at all times relevant had direct supervisory authority over the Plaintiff including the authority to discipline, terminate, promote and make entries into the Plaintiff's employment file.

Joseph Wynne and Patrick Spinola held direct supervisory authority over Cheryl Pepe at all times relevant herein. At all times relevant herein, Pepe and two other IRS

employees, Joseph Wynne and Patrick Spinola were acting within the scope of their offices and employment with the Treasury Department.

On or about March 1, 2000 Cheryl Pepe delivered photocopies of a book entitled Who Moved My Cheese to all of her subordinates with orders to read and be prepared to discuss the photocopied excerpts at a March 15, 2000 meeting. Mr. Jordan received a copy of the book. On or about March 15, 2000 the Plaintiff attended a meeting at the direction of the Cheryl Pepe, wherein Ms. Pepe laughed at the fact she illegally copied the book and asked her employees to "shred the evidence." Mr. Jordan, concerned that Cheryl Pepe had violated Federal law and concerned that she did not rectify the situation, contacted the publisher of the book to determine whether the IRS had permission to copy the book. The Plaintiff approached Ms. Pepe concerning the issue. She told him "Don't f... with me" and implied that she would cause difficulty for him if he persisted. The Plaintiff determined that the IRS did not have permission to copy the book and believed that the violation of Federal law by the IRS was improper.

Following the conversation, Cheryl Pepe, with the actual or tacit approval of the her supervisors Patrick Spinola and Joseph Wynne, began a course of conduct (the majority of which occurred in September through February 2000) ultimately ending with the Plaintiff's resignation in February 2001. That course of conduct included (a) False and misleading entries into the Plaintiff's employment record;

(b) Negative reviews and assessments not based upon fact; (c) Humiliation and embarrassment; (d) Revocation of the Plaintiff's status in regard to flex-time; and (e) Denial of the Plaintiff's constitutional rights under the Hatch Act. This course of action was apparently an indirect and unofficial attempt to punish Mr. Jordan in a manner which he could not legally challenge.

As a direct and proximate result of the Defendant's actions, Plaintiff has suffered severe and painful and permanent injuries and emotional distress, including (a) Severe emotional distress and anxiety; (b) Severe anxiety and agitation; (c) Diminished quality of life; (d) Weight loss; (e) Loss of sleep; (f) Loss of concentration; (g) Loss of appetite; (h) Depression; and (i) Inability to relate to and interact with others.

II.   **ARGUMENT**

   **A. Standard of Review.**

   **1. THE LEGAL STANDARD UNDER RULE 12 (b)(6).**

A claim may only be dismissed either because it asserts a legal theory that is not cognizable as a matter of law or because it fails to allege sufficient facts to support a cognizable legal claim. See, Smile Dental Care Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Circ. 1996) cert denied 519 J.S. 1028 (1999). When a claim is challenged under this Rule, the court must accept that all well-pleaded allegations are

true and resolve all doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the non-moving party. See, Albright v. Oliver, 510 U.S. 266, 267 (1994).

The Rule erects a powerful presumption against dismissing pleadings failing to state a cognizable claim for relief. Maez v. Maintain States Tel. & Tel., 54 F.3d 1488, 1496 (10th Cir. 1995). Such dismissals are not favored and, in view of the Rules' "notice pleading" requirements, are not routinely granted. See, Lelevy v. United States, 178 F.3d 750, 754 (5th Cir. 1999). A claim will only be dismissed under Rule 12(b)(6) if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief. Conley v. Gibson, 355 U.S. 41, 78 (1957). A claim generally will not be dismissed even though the asserted legal theories are not cognizable or the relief sought is unavailable, so long as other tenable legal claims are evident on the fact of the complaint, see, Conley v. Gibson, supra, or the pleader is otherwise entitled to any type of relief under another possible legal theory. See, Bowers v. Hurdwick, 478 U.S. 186 (1986).

## 2.    THE LEGAL STANDARD UNDER RULE 12(B1)(C1)

The burden lies with the party invoking the court's jurisdiction, although this burden is not a heavy one. See, Thomson v. Gaskill, 315 U.S. 442 (1992). In federal question cases, the party must demonstrate a non-frivolous claim based on federal law,

4

and must meet all other statutory prerequisites for litigating the federal claim (such as exhaustion of administrative remedies and compliance with all claims-filing limitations and requirements). *See, Hart v. Department of Labor*, 116 F.3d 1338 (10th Cir. 1997). In all cases, the lawsuit must remain a live "case or controversy" subject to the federal courts' judicial power under Article III of the Constitution. *Bateman v. City of West Bountiful*, 89 F.3d, 704, 706 (10th Cir. 1999).

In the case of factual (or substantive) subject matter jurisdiction attacks – indicting the court's power to adjudicate – the court will *not* presume that plaintiff's factual allegations are true, but may instead weigh the evidence before it and find the facts, so long as this factfinding does not involve the merits of the dispute. *See, Scarfo v. Ginsberg*, 175 F.3d 957, 960-61 (11th Cir. 1999). If the merits are implicated by the jurisdictional challenge, the court will treat the motion as any other substantive challenge to the merits of the dispute, constrained by the limitations of summary judgment practice and reserving the resolution of genuine issues of material fact for the ultimate fact finder. *United States v. North Carolina*, 180 F.3d 574, 580 (9th Cir. 1999). The only "evidence" outside the scope of the complaint in this case is the unsworn declaration of Edward G. Duncan. No other "evidence" has been offered.

Generally, the court will permit a party to amend unless it is clear that subject matter jurisdiction cannot be truthfully averred. See, *Leaf v. Supreme Court of Wisconsin*, 979 F.2d 589-595 (7th Cir. 1992), cert denied, 508 U.S. 941 (1993).

### B. Plaintiff's Claims Are Not Barred by the FECA.

The precise issue raised by the government in this case was raised in *Tippetts v. United States*, 308 F.3d 1091 (9th Cir. 2002). In that case, a postal employee filed suit against the government under the Federal Tort Claims Act, 28 U.S.C.S. §1346(b), 2671-2680, alleging, inter alia, intentional infliction of emotional distress. The government raised FECA (the Federal Employees Compensation Act) as a defense and moved to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The court said:

> The Federal Employees' Compensation Act is a workers' compensation plan for federal government employees. 20 C.F.R.§10.0. It provides that "the United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . . " 5 U.S.C. §8102(a). If a claim is covered by the FECA, the court is without jurisdiction to consider its merits. *Swafford v. United States*, 998 F.2d 837, 839 (10th Cir. 1993) (citing *Cobia v. United States*, 384 F.2d 711, 712 (10th Cir. 1967). The Secretary's determination that the FECA applies forecloses an FTCA claim, 5 U.S.C.§8116(c); see also *Southwest Marine, Inc. v. Gizon*, 502 U.S. 81, 90, 116 L.Ed. 2d 405, 112 S. Ct. 486 (1991) ("The courts have no jurisdiction over FTCA claims where the Secretary of Labor determines that FECA applies."); *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193-194, 74 L.Ed. 2d 911, 103 S. Ct. 1033 (1983) (noting FECA's exclusive-liability provision guarantees employees "the right to receive immediate, fixed benefits,

regardless of fault and without need for litigation, but in return they lose the right to sue the Government.") If the FECA applies, the FTCA claim must be dismissed even if benefits are not actually awarded by the Secretary. *Farley, 162 F.3d at 616.*

There has been no determination that FECA applies to Mr. Jordan's case. The government's declaration (*See*, Declaration of Edward G. Duncan) is an unsworn statement to the effect that Mr. Duncan believes that "there is a significant possibility of coverage under the FECA." This obviously self-serving opinion does not deprive the court of subject matter jurisdiction. As in *Tippetts v. United States, supra*, the possibility of coverage does not deprive the court of subject matter jurisdiction. It is a determination of coverage which does. The Declaration is insufficient to establish coverage.

Moreover, it is not clear whether any of the damages claimed in this case are covered by the FECA. In *Tippetts*, the Plaintiff argued that "emotional distress" does not qualify as a "personal injury". The court said:

> Mr. Tippetts argues that emotional distress does not qualify as "personal injury" covered by the FECA. See 5 U.S.C. §8102(a). There is some support for this position. See *Sheehan v. United States*, 896 F.2d 1168, 1174 (9th Cir.) ("FECA compensates government employees only for physical harm."), modified on other grounds, 917 F.2d 424 (9th Cir. 1990); cf. *DeFord v. Sec'y of Labor*, 700 F.2d 281, 290 (6th Cir. 1983)(suggesting that FECA does not cover mental distress for intentional discrimination). Circuit precedent, however, directs a finding that Mr. Tippetts' claim for intentional infliction of emotional distress presents a substantial question of FECA coverage. *Farley*, 162 F.3d at 615-16 (claiming emotional

distress resulting from sexual harassment by another employee); accord *Bennett v. Barnett*, 210 F.3d 272, 274, 278 (5th Cir. 2000) (claiming emotional distress from on-the-job harassment); *McDaniel v. United States*, 970 F.2d 194, 195-197 (6th Cir. 1992) determined that claimant's emotional injuries caused by supervisor's harassment were covered by FECA); see generally Andrew M. Campbell, Annotation, Federal Compensation Acts, In Nature of Workers' Compensation Acts, As Affecting Recovery Against United States Under Federal Tort Claims Act, 135 A.L.R. Fed. 403 (1996).

Mr. Jordan claims emotional distress, not simply physical harm. He claims economic damages flowing from the emotional injury. There is clearly an issue of coverage under FECA. There being an issue of fact, the Motion to Dismiss must be denied. The *Tibbetts* court concluded:

> Mr. Tippetts' claim of intentional infliction of emotional distress presents a substantial question of FECA coverage and, therefore, must be submitted to the Secretary for a determination of coverage. Although the issue of FECA coverage is uncertain for his claims of invasion of privacy and defamation, under the circumstances of this case, we determine that it is most efficient to obtain a coverage ruling from the Secretary in conjunction with her ruling on the emotional-distress claim. Even if the Secretary determines that the statute of limitations has run on the claims, she must announce whether she would have taken jurisdiction if the statute if the limitations period had not expired.

The Plaintiff's claims cannot at this time be dismissed based upon FECA. Mr. Jordan has alleged intentional, negligent and reckless infliction of emotional distress. It is not clear that these types of claims will be covered under FECA. *Tippetts*, teaches

8

that unless the FECA claim is accepted or certainly will be, the case should not be dismissed.

### C. THE PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE CIVIL SERVICE REFORM ACT (CSRA).

In *Orsay v. U.S. Department of Justice*, 289 F.3d 1125 (9th Cir. 2002), the Ninth Circuit Court of Appeals said of the CSRA:

> The CSRA provides a remedial scheme through which federal employees can challenge their supervisors' "prohibited personnel practices." 5 U.S.C. §2302. If the conduct that Appellants challenge in this action falls within the scope of the CSRA's "prohibited personnel practices," then the CSRA's administrative procedures are Appellants' only remedy, and the federal courts cannot resolve Appellants' claims under the Privacy Act and the FTCA. *See, Houlihan v. Office of Pers. Mgmt.*, 909 F.2d 383, 384-85 (9th Cir. 1990) (the CSRA preempted a federal employee's Privacy Act claim that alleged the misclassification of her employment position, a "prohibited personnel practice" under the CSRA); *Rivera v. U.S.*, 924 F.2d 948, 951-52 (9th Cir. 1991) (the CSRA preempted a federal employee's FTCA claim regarding her supervisor's retaliation after the employee filed a complaint about the supervisor, a "prohibited personnel practice" under the CSRA). [emphasis added]

The actions complained of by Mr. Jordan are not "prohibited personnel actions." His claims do not involve matters of appointment, promotion, disciplinary or corrective actions, matters of transfer or reassignment, reinstatement, restoration, reemployment, performance evaluation, etc. He does not allege that any employee of the IRS took official actions toward him. He does not challenge a specific act or action. Mr. Jordan alleges the systematic infliction of embarrassment, humiliation and emotional distress,

outside the scope of normal employment practices, which caused him to leave his employment. Cheryl Pepe's expletive, for example, is much like the one used in the *Orsay* case.

> The *Orsay* court, in addressing the tortious conduct at issue, said:
>
> In order for the CSRA to preempt a federal cause of action, the underlying conduct must involve "personnel action," which the statute defines to mean any appointment, promotion, disciplinary or corrective action, detail, transfer, or reassignment, reinstatement, restoration, reemployment, performance evaluation, decision concerning pay or benefits and the like, decision to order psychiatric examination, and any other significant change in duties, responsibilities, or working conditions. *See*, 5 U.S.C. §2302(a)(2)(A)(i)-(xi); *Brock v. U.S.*, 64 F.3d 1421, 1424-25 (9th Cir. 1995) (holding that the CSRA does not preempt federal claims involving conduct that does not fall within one of the CSRA's eleven categories of "personnel action"); *Collins*, 195 F.3d at 1079-80 (finding the district court's dismissal improper when the CSRA's definition of "personnel action" did not cover the conduct at issue). Claxton's alleged aiming of a loaded weapon at Appellants does not fit any of the CSRA's definitions of "personnel action." Consequently, the CSRA does not bar Appellants' FTCA claims that Claxton's behavior constituted assault and intentional infliction of emotional distress. *See*, *Brock*, 64 F.3d at 1424-35 (the CSRA did not preclude consideration of claims of rape and sexual assault); *Collins*, 195 F.3d at 1079-80 (the CSRA did not preempt a claim regarding a warrantless search of a plaintiff-employee's home). [emphasis added]

The facts alleged in this case do not involve a personnel action. The underlying tort is far broader than that and invokes a systematic abuse of power personally designed to cause harm to Mr. Jordan. The allegations of the plaintiff's complaint do not fall within the definition of personnel action within the meaning of CSRA. Moreover,

whether the conduct alleged falls within the CSRA may well require a factual determination which cannot be resolved in a Motion to Dismiss.

### D. THE PLAINTIFFS CLAIM UNDER THE FTCA WAS FILED WITHIN TWO YEARS OF THE ACCURAL OF THE CAUSE OF ACTION.

In *Guccione v. United States*, 670 F. Supp. 567 (S.D. New York, 1987), the United States District Court for the Southern District of New York discussed the FTCA and in particular 28 USC § 2401(b), as follows:

> Title 28 U.S.C. § 2401(b) provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues..." <u>The general rule for accrual of an FTCA claim is that accrual occurs at the time that the injury or harm is inflicted.</u> See *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982), *Cert. denied* 462 U.S. 1131, 77 L. Ed. 2d 1366, 103 S. Ct. 3111 (1983). Applying this most commonly applicable FTCA accrual rule, the accrual of Guccione's claim would have been in 1979 when he was allegedly injured by Weinberg's defamatory activities and the FBI's negligent supervision of this individual.

Mr. Jordan's cause of action "accrued" when he was injured. The injury was afflicted when the abuse reached the point it required Mr. Jordan to retire. His claim was, therefore, timely filed in September 2002. Mr. Jordan was the victim of a course of

conduct ending in February 2001 with his resignation from the IRS[1]. His injuries accrued when he was injured in February 2001 when he was forced to resign his position.

The Government misconstrues the Plaintiff's complaint in claiming the March occurrence critical date. These incidents establish only the motivation of the parties.. In fact, the March meeting is not itself an actionable occurrence. It is simply the motivation for the later actions culminating in the injury sustained when Mr. Jordan was forced to resign.

## III.   CONCLUSION:

For all the reasons set forth above, the Government's Motion to Dismiss must be denied. In the event the court intends to grant the motion in whole or in part, the Plaintiff would request the opportunity to amend his complaint to satisfy any defects found by the Court.

---

[1] These are various facts relevant to the Plaintiff's complaint. The majority of the incidents occurred in September, October, November, December and January, 2000. the occurrences in March 2000, simply establish the motivation of the actors.

12

THE PLAINTIFF
JEFFREY JORDAN

By: */signature/*
Kenneth A. Votre (ct05981)
Hurwitz, Cooper, Silverman & Votre, P.C.
667 State Street
New Haven, CT 06511
Tel. (203) 562-9955
Fax (203) 789-0776

## CERTIFICATION

This is to certify that a copy of the foregoing Motion was mailed, postage prepaid, on this, the 8th day of December 2003, to the following counsel and *pro se* parties of record:

Lauren M. Nash
Assistant U.S. Attorney
P.O. Box 1824
New Haven, CT 06508
Tel. (203) 821-3700

*/signature/*
Kenneth A. Votre, Esq.

13